Filed 10/5/20  Avalos v. Rodriguez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JONATHAN AVALOS, Cross-Complainant and Appellant, v. DANIEL RODRIGUEZ, et al., Cross-Defendants and Respondents. | F077350 (Super. Ct. No. BCV-16-102861) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Frederick C. Kumpel for Cross-Complainant and Appellant.

Rodriguez & Associates, Daniel Rodriguez, Chantal A. Trujillo; Esner, Chang & Boyer and Andrew N. Chang for Cross-Defendants and Respondents.

-ooOoo-

In this matter, cross-complainant and appellant Jonathan Avalos appeals from an order granting cross-defendants and respondents Daniel Rodriguez and Rodriguez & Associates' (together "Rodriguez") special motion to strike Avalos's cross-complaint for intentional and negligent infliction of emotional distress filed against Rodriguez.  We conclude the trial court correctly determined Avalos's cross-complaint arises from

Rodriguez's protected speech activity within the scope of the anti-SLAPP statute, and that Avalos failed to establish a probability of prevailing on either of his two causes of action against Rodriguez. (Code Civ. Proc.,[1] § 425.16, subds. (b)(1), (e).) Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2014, Rodriguez filed a first amended complaint on behalf of his client, A.G., a female minor. The lawsuit, entitled *A.G. v. Lamont School District, et al.*, named as defendants Lamont School District and several district employees. (*A.G. v. Lamont School District, et al.*, Super. Ct. Kern County, 2014, No. S-1500-CV-282905.) On June 1, 2016, Rodriguez filed a second lawsuit on behalf of a different female minor, M.A.. That lawsuit, entitled *M.A. v. Lamont School District, et al.*, also named Lamont School District and several district employees as defendants. (*M.A. v. Lamont School District, et al.,* Super. Ct. Kern County, 2016, No. BCV-16-101232.) Both lawsuits brought claims for negligence against the defendants, and the M.A. suit further alleged intentional infliction of emotional distress. Avalos was not named as a defendant in either of these lawsuits.

Both of these complaints contained allegations that the respective plaintiffs were "assaulted, sexually assaulted, molested, and/or offensively and inappropriately touched by Defendant's Instructor Jonathan Avalos." The complaints also alleged the defendants should have known Avalos "was offensive, dangerous, violent, aggressive, threatening, menacing, and/or likely to commit an assault, sexual assault, molest, and/or offensively touch a student." The M.A. complaint alleged Avalos inappropriately touched and talked to M.A. "in an inappropriate and dirty manner" on at least two separate occasions. Avalos allegedly grabbed M.A.'s butt, forced M.A. to sit on his lap, and ground her back and forth against his lap.

---

[1] Unlabeled statutory references are to the Code of Civil Procedure.

On June 1, 2016, before the M.A. lawsuit was filed, Rodriguez conducted a press conference with members of the media.[2]  His interviews with the press that day formed the basis of two news articles published online.  The Bakersfield Californian, a newspaper in Kern County, published an article on its website on June 1, 2016.  The article reported that Rodriguez "alleges two elementary school girls were molested by a computer lab technician over the course of at least two years" and that the defendant school district transferred the accused employee five times to "skirt the issue."  The article also reported Rodriguez filed suit "against the district in its handling of an employee he accuses of molestation, Jonathan Avalos, a computer lab tech who worked at the district for eight years until he resigned in 2014."  Rodriguez was also reported as alleging the district "did little to investigate 'red flags' raised about Avalos' conduct between 2009 and 2014."  Rodriguez was quoted as saying the lawsuits are "about a violation of trust—the trust that all of us parents placed on the district to protect our most precious possessions, and that's our children.  And specifically, to protect our children against the danger of any alleged sexual predator, any alleged pedophile."

Also on June 1, 2016, the second article was published on the website of 23ABC News, a Bakersfield television news station.[3]  This article was shorter and began with the following sentence:  "The Lamont Elementary School District was be [*sic*] named in a lawsuit Wednesday morning, stemming from allegations that a former employee inappropriately touched students."  The article goes on to describe the allegations concerning Avalos's conduct.

---

[2] Both parties characterize Rodriguez's meeting with the press as a "press conference."  However, the record does not disclose where this conference was held, whether it was open to the public, or how many persons attended.  The potential significance of this is discussed post.

[3] The record does not disclose whether 23ABC News ran a television news story.

The original complaint in the A.G. lawsuit was dismissed on November 23, 2016, and A.G. filed a new complaint on December 8, 2016. (*A.G. v. Lamont School District, et al.*, Super. Ct. Kern County, 2016, No. BCV-16-102861.) Several defendants were named in this complaint, including the school district and Avalos.[4] Avalos filed his cross-complaint in this action on July 26, 2017, and his first amended cross-complaint on December 19, 2017. The first amended cross-complaint alleges intentional and negligent infliction of emotional distress against Rodriguez. His theory of recovery was that Rodriguez knowingly and falsely announced at the June 1, 2016, press conference that Avalos engaged in acts of sexual misconduct with students and minors. The cross-complaint sought punitive damages.

Rodriguez filed a special motion to strike Avalos's cross-complaint pursuant to the provisions of section 425.16, which authorizes a defendant to file a special motion to strike a cause of action arising from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. Avalos opposed the motion to strike, and Rodriguez filed a reply.

In a detailed 10-page ruling, the trial court granted the special motion to strike. The court first held that Rodriguez's statements to the press, as reflected in the two news articles, were part of an act by Rodriguez in furtherance of his right of petition or free speech in connection with a public issue. The court found Rodriguez's statements

[4] After the notice of appeal of the granting of Rodriguez's special motion to strike was filed, this second *A.G.* lawsuit proceeded to jury trial. The jury returned a special verdict and found Avalos liable for "touch[ing] A.G. on her butt, chest, or between her legs in an offensive manner." The jury awarded A.G. $10,000,000 in punitive damages, but the trial court reduced this amount to $50,000 upon Avalos's motion for new trial. Rodriguez's request for judicial notice of the Judgment on Special Verdict, and Avalos's request for judicial notice of the minute order of the trial court's ruling on Avalos's motion for new trial and motion for judgment notwithstanding the verdict are granted. Rodriguez's request for judicial notice of a minute order dated March 15, 2019, is denied as unnecessary to the determination of the issues on appeal.

4.

qualified as protected speech under three of the four categories of protected speech codified in section 425.16, subdivision (e). Specifically, the court found Rodriguez's statements were: statements "made in connection with an issue under consideration or review by a … judicial body" (section 425.16, subd. (e)(2)), statements "made in a place open to the public or a public forum in connection with an issue of public interest" (section 425.16, subd. (e)(3)), and "conduct in furtherance of" the constitutional rights of petition or free speech "in connection with a public issue or an issue of public interest" (section 425.16, subd. (e)(4)).

The trial court also found that Avalos had not demonstrated a probability of success on the merits because the true and fair reporting privilege codified in Civil Code section 47, subdivision (d), acted as a complete bar to Avalos's recovering on either of his causes of action. The trial court accordingly granted Rodriguez's motion and ruled Rodriguez shall be entitled to his attorney's fees and costs.

A notice of entry of the trial court order was served on the parties, and Avalos timely appealed.

## DISCUSSION

### I.       Background law and standard of review

Section 425.16, subdivision (b)(1), states, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Section 425.16 is to be "construed broadly." (§ 425.16, subd. (a).)

Considering a section 425.16 motion is a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to

5.

demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

A defendant satisfies the first step of the two-prong analysis "by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16] [citation], and that the plaintiff's claims in fact *arise* from that conduct [citation]. The four categories in subdivision (e) describe conduct 'in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' (§ 425.16, subd. (e).)" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.)

An order granting a special motion to strike under section 425.16 is appealable. (§§ 425.16, subd. (i); 904.1, subd. (a)(13).) " 'Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider "the pleadings, and supporting and opposing affidavits upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, … [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' " (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326.)

## II.    Avalos's contentions

Avalos contends the trial court erred in granting Rodriguez's motion to strike. We perceive from his briefing that he does not challenge the trial court's conclusion that Rodriguez's statements come within section 425.16, subdivision (e). Instead, it appears

6.

he is challenging only the trial court's conclusion that his cross-complaint has no probability of success on the merits. Specifically, he challenges the trial court's finding that Civil Code section 47, subdivision (d), applies and completely bars his recovery.

We will first address the trial court's correct conclusion regarding the first prong of the analysis, namely that Rodriguez's statements were made in connection with an issue of public interest. We will conclude Rodriguez's statements qualify as protected speech under section 425.16, subdivision (e)(3), and thus we need not address the trial court's conclusion that Rodriguez's statements also qualify under subdivisions (e)(2) and (e)(4). We will then show why the trial court correctly determined Avalos's cross-complaint had no chance of success because (1) Rodriguez's statements were privileged, and (2) Avalos's cross-complaint was legally insufficient.

## III. Protected activity

The trial court correctly concluded the statements at issue come within section 425.16, subdivision (e)(3)—i.e., they are "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in connection with an issue of public interest." Accordingly, the trial court properly found this suit arose out of activity protected by the anti-SLAPP statute.

The statements Rodriguez made at the press conference that were subsequently published on local news websites were made in a public forum. "To be protected by section 425.16, subdivision (e)(3), the statements on which suit is based must have been made 'in a place open to the public or a public forum.' A 'public forum' traditionally has been defined as a place that is open to the public where information is freely exchanged." (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1036 (*Nygard*).) Newspapers and magazines, including online newspapers, are public fora within the meaning of section 425.16, subdivision (e)(3). (*Id.* at p. 1038; *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 ["Web sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute."].)

7.

The parties agree the press conference itself was a public forum. Despite the parties' agreement, however, we are unsure whether the press conference was a public forum. The record is unclear as to where the press conference occurred or whether it was open to the public. As far as the record reveals, it is possible the "press conference" was only attended by specific media members that Rodriguez invited to his private office. The parties have supplied no briefing as to whether such a press conference would qualify as a public forum, and it is unclear whether the press conference qualified as a public forum. (See *Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 81 [where meeting not open to the public and attendees limited to a small group, it may not qualify as "public forum"].)

Nevertheless, the online news websites where Rodriguez's statements were published were undoubtedly public fora. (*Kronemyer v. Internet Movie Database, Inc.* (2007) 150 Cal.App.4th 941, 950 [internet website a public forum where statements on website "accessible to anyone who chooses to visit the site"].) Indeed, Rodriguez called the press conference for the express purpose of having his statements published in the news media, and the press conference and media attendees were thus the conduit by which Rodriguez made his statements to the public. We therefore conclude that, at least on this basis, Rodriguez's statements were made in public fora, i.e., the online news websites.

The parties also agree, and we concur, the statements were made in connection with an issue of public interest. " 'Public interest' within the meaning of the anti-SLAPP statute includes 'not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity.' " (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479.) A statement or activity has been held "in the public interest" when it involves a person or entity in the public eye, conduct that could affect large numbers of people beyond the direct participants, or a topic of widespread interest. (*Rivero v. American*

*Federation of State, County & Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924.) Clearly, the statements in this case involve an issue of high public interest and importance: the alleged sexual abuse of young children in a public school.

Having demonstrated Rodriguez's statements are protected under section 425.16, subdivision (e)(3), Rodriguez has satisfied the first prong of the anti-SLAPP analysis.[5] We now turn to whether Avalos has demonstrated a probability of success on the merits.

## IV. Probability of prevailing

Since Rodriguez has satisfied his initial burden under prong one, the burden shifts to Avalos to demonstrate a probability of prevailing on his claims. (See *Ramona Unified School Distr. v. Tsiknas* (2005) 135 Cal.App.4th 510, 518-519.) In order to demonstrate a probability of prevailing, Avalos must demonstrate that the cause of action both (1) states a claim (i.e., a pleading test); and (ii) is supported by prima facie evidence which, if uncontroverted, is sufficient to support a judgment on the cause of action in the plaintiff's favor. (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 476.)

As we will explain below, Avalos's cross-complaint is legally insufficient to maintain causes of action for intentional and negligent infliction of emotional distress. But first, we agree with the trial court's correct determination that the fair and true reporting privilege codified in Civil Code section 47, subdivision (d), acts as a complete bar to Avalos's causes of action.

---

[5] Avalos contends an attorney speaking at a press conference "must be held to a higher standard that is different than a non-lawyer who is not subject to ethical rules and the Rules of Professional Liability and case law." Without expressly doing so, we perceive him to be asking this court to create and apply a new standard. We, of course, cannot do this, and we devote no attention to this proposition outside of this footnote. (*City of Santa Cruz v. Superior Court* (1995) 40 Cal.App.4th 1146, 1150–1151 [power to make laws is vested in legislative department and courts cannot interfere with legislative process; ancillary to separation of powers deference is proposition that court may not inquire into motives of legislature in making its laws].)

## A.    Civil Code section 47, subdivision (d)

Civil Code section 47, subdivision (d), makes privileged "a fair and true report in, or a communication to, a public journal, of ... a judicial … proceeding, ... or ... of anything said in the course thereof …." (Civ. Code, § 47, subd. (d).) "The privilege applies if the substance of the publication or broadcast captures the gist or sting of the statements made in the [judicial] proceedings." (*Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1337.) "If Civil Code section 47, subdivision (d) applies, the statement is absolutely privileged regardless of the defendants' motive for reporting it." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 278.) The report need not be 100 percent accurate. "Fair" means the statement captures the "gist" or "sting" of the proceedings. (*Carver v. Bonds* (2005) 135 Cal.App.4th 328, 351–352 (*Carver*); *Colt v. Freedom Communications, Inc.* (2003) 109 Cal.App.4th 1551, 1558–1560 [neither subtle differences between plaintiff's actual conduct and that reported by defendant nor true errors void privilege (word-for-word quotations from legal proceedings not required)].) Defendants bear the burden of proving the privilege's applicability. (*Carver, supra,* 135 Cal.App.4th at pp. 348–349.) Because there is no meaningful factual dispute over the content and distribution of Rodriguez's statements to the press, whether the privilege applies is a question of law. (See *Howard v. Oakland Tribune* (1988) 199 Cal.App.3d 1124, 1128.)

The trial court correctly concluded Civil Code section 47, subdivision (d), applies to Rodriguez's statements, and thus Avalos cannot possibly succeed on either of his causes of action. Avalos disagrees. He contends Rodriguez's statements, namely Rodriguez's characterizing Avalos as an alleged "sexual predator," "criminal," and "pedophile," did not capture the gist of the allegations in the complaints Rodriguez filed on behalf of his clients. Specifically, Avalos argues that, at the time the statements were made, it had not yet been proven Avalos was a sexual predator, criminal, or pedophile, and thus it was improper for Rodriguez to make his statements.

10.

We perceive Avalos's argument to be, in essence, that Rodriguez's statements were untrue and thus could not be privileged under Civil Code section 47. However, the critical error in Avalos's analysis is that his briefing in both the trial court and here on appeal focuses on the applicability of Civil Code section 47, subdivision (b), rather than subdivision (d). But since neither Rodriguez's moving papers nor the trial court's ruling discussed Civil Code section 47, subdivision (b), we do not understand why Avalos has devoted so much of his briefing to discussing it.

Avalos's argument also rests heavily on a discussion of *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, a case that discussed the application of Civil Code section 47, subdivision (b). In that case, the Court of Appeal held an attorney's statements to the press were not privileged under Civil Code section 47, subdivision (b). (*Id.* at p. 1145.) However, that case did not involve the applicability of Civil Code section 47, subdivision (d), and as such is of no use to our analysis here.

A "public journal," for purposes of Civil Code section 47, subdivision (d), includes newspapers and television broadcast companies. (*Green v. Cortez* (1984) 151 Cal.App.3d 1068, 1073.) The two online news websites where Rodriguez's statements were published satisfy this definition. Additionally, Rodriguez's statements "capture[d] the gist" of the allegations in the complaints he filed on behalf of his clients. We recognize the complaints did not employ the terms "sexual predator," "criminal," or "pedophile." However, the allegations of the complaints describe conduct that could fairly be described as predatory, criminal, and pedophilic. The complaints aver Avalos sexually "molested" the minor plaintiffs, and the M.A. complaint specifically alleges Avalos: touched and talked to M.A. "in an inappropriate and dirty manner" on at least two separate occasions; grabbed M.A.'s butt; forced M.A. to sit on his lap; and ground her back and forth against his lap  This alleged conduct, if proven true, would constitute predatory pedophilia, which everyone in society knows is criminal. As such, the descriptive words Rodriguez employed in his statements to the press to describe Avalos's

11.

alleged conduct accurately and fairly captured the gist of the allegations made in the underlying complaint. Civil Code section 47, subdivision (d), therefore acts as a complete bar to Avalos's cross-complaint.

Additionally, Avalos appears to argue Civil Code section 47, subdivision (b), does not apply because Rodriguez's statements violated Rule 5-120 of the State Bar Rules of Professional Conduct. However, we must analyze Avalos's claim within the context of Civil Code section 47, subdivision (d), because it is the operative statute here. Civil Code section 47, subdivision (d)(2)(A), provides that a communication to a public journal is not privileged if it "[v]iolates Rule 5-120 of the State Bar Rules of Professional Conduct." Effective March 1, 2020, Rule 5-120 was replaced by Rule 3.6, but the Civil Code has not yet been amended to reflect this change.

Former Rule 5-120(A) stated: "A member who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the member knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Former Rule 5-120(B)(1) added: "Notwithstanding paragraph (A), a member may state the claim, offense, or defense involved and, except when prohibited by law, the identity of the persons involved."

Current Rule 3.6(a), which is substantively similar to its predecessor, Rule 5-120(A), reads: "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will (i) be disseminated by means of public communication and (ii) have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Rule 3.6(b)(1) adds: "Notwithstanding paragraph (a), …, lawyer [*sic*] may state: the claim, offense, or defense involved and, except when prohibited by law, the identity of the persons involved[.]"

Whether current Rule 3.6 or former Rule 5-120 is applied, there is no evidence in the record indicating Rodriguez knew or reasonably should have known his statements would have a substantial likelihood of materially prejudicing any of the then-pending lawsuits. Indeed, there is no evidence to suggest Avalos suffered any prejudice at all.

## B. Inadequacy of Avalos's pleadings

In addition to the trial court's conclusion regarding the determinative effect of Civil Code section 47, subdivision (d), we further conclude Avalos's cross-complaint was insufficient to advance either of his causes of action. "In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must ' "state[ ] and substantiate[ ] a legally sufficient claim" ' [Citations.] Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) "A complaint 'is sufficient if it alleges ultimate rather than evidentiary facts,' but the plaintiff must 'set forth the essential facts of his [or her] case with reasonable precision and with particularity sufficient to acquaint [the] defendant with the nature, source, and extent' of the plaintiff's claim. Legal conclusions are insufficient." (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1238.)

For the reasons outlined below, we conclude as a threshold matter that Avalos's cross-complaint is legally insufficient to maintain causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress.

"A cause of action for [intentional infliction of emotional distress] requires proof of: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress." (*Crouch v.*

13.

*Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1007.) "Severe emotional distress means ' "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." ' " (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal. 4th 965, 1004.)

Avalos's cross-complaint only alleges in conclusory fashion he has suffered "severe emotional distress." He has not alleged any facts that would tend to prove he has suffered any distress, let alone severe emotional distress. For example, he has not alleged any symptomology. His failure to allege any facts to support this essential element renders his cross-complaint legally insufficient as to his cause of action for intentional infliction of emotional distress.

"A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1377.) Here, Avalos avers in conclusory fashion Rodriguez breached the duty he owed Avalos. Avalos does not describe what duty Rodriguez owed to him, and does not allege facts that would allow us to discern any theory of duty. Accordingly, Avalos's cause of action for negligent infliction of emotional distress cannot be advanced as is.

In sum, Avalos's cross-complaint has no probability of succeeding for two independent reasons: (1) the applicability of Civil Code section 47, subdivision (d), as a complete bar, and (2) the legal insufficiency of both of Avalos's purported causes of action.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

SNAUFFER, J.

WE CONCUR:

LEVY, Acting P.J.

MEEHAN, J.

15.